UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**FITZROY POWELL, on behalf of himself and others similarly situated**

**Plaintiff,**

v.

**ALDOUS & ASSOCIATES, P.L.L.C.,**

**Defendant.**

Civ. No. 17-3770-KM-MAH

**OPINION**

**MCNULTY, District Judge:**

The plaintiff, Fitzroy Powell, brings this putative class action against Aldous & Associates, P.L.L.C. ("Aldous") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices. (FAC ¶¶ 1, 11).[1] Now before the court is the motion of the defendant, Aldous & Associates, P.L.L.C. ("Aldous") to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted.

---

[1]     Citations to the record are abbreviated as follows:

"FAC" = First Amended Complaint (ECF no. 7)

"Def. Br." = Defendant's Memorandum of Law in Support of Motion to Dismiss First Amended Complaint (ECF no. 8)

"Pl. Br." = Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss (ECF no. 10)

1

## I.   BACKGROUND[2]

Plaintiff Fitzroy Powell lives in Paterson, New Jersey. (FAC ¶ 6). Before January 21, 2017, Powell entered into an agreement with Diamond Wireless for personal wireless service. (FAC ¶¶ 15-25). Pursuant to that agreement, Powell came to owe Diamond a debt, which was placed with Aldous for collection. (FAC ¶¶ 27-30).

Aldous is a law firm located in Utah. (FAC ¶ 7). Aldous is in the business of collecting debts owed to others. (FAC ¶¶ 8-9). Aldous sent Powell a letter dated January 21, 2017, which states, in relevant part:

> The original creditor of this file, Diamond Wireless, has developed an "Amnesty Program," for seriously delinquent accounts. Therefore, you will be permitted to clear your obligation on your past due amount by paying 50% of the Total Due to our office no later than April 15, 2017.
>
> Amnesty Program amount to settle debt: $200.00. Pay now online by going to www.aldouslegal.com and click "Pay Now" at the top. Be sure to reference the listed account number.
>
> A negative credit report reflecting on your credit record may be submitted to a credit reporting agency and will remain if you fail to fulfill the terms of your credit obligations. Upon receipt of this payment, your account and any negative report to the credit bureau will be "Settled in Full," and you will be released from further obligation.
>
> If you desire to pay over the phone, please contact our office today at 1.888.221.5155. More than thirty (30) days has passed since our first written notice to you. Currently, your obligation is not resolved.
>
> When payment is received your obligation will be finalized and closed. Once paid and if you choose, you will be able to enter into a new agreement with the original creditor.
>
> Sincerely,
>
> Aldous & Associates, P.L.L.C.

---

[2]   For purposes of this motion to dismiss, I take the allegations of the complaint as true and view them in the light most favorable to the plaintiff. *See* Section II, *infra*.

2

**THIS IS AN ATTEMPT TO COLLECT A DEBT: ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

**At this time, not [sic] attorney with this firm has personally reviewed the particular circumstances of your account.**

OUR ATTORNEYS ARE ADMITTED TO PRACTICE IN ONE OR MORE OF THE FOLLOWING: NEW YORK**, LOUISIANA*, PENNSYLVANIA*, UTAH*

(FAC ex. A) (emphasis in original).[3] This letter to Powell stated that he owed $400 but could "settle" the debt for $200. (FAC ¶¶ 38, ex. A). As of the date of the letter, no attorney employed with Aldous was licensed to practice in New Jersey. (FAC ¶ 41).

From Powell's perspective, Aldous's use of the January 21, 2017 letter would confuse "the least sophisticated consumer" as to whether Aldous was meaningfully involved in the matter as an attorney. (FAC ¶ 44). The complaint alleges that Aldous's letter falsely implies that an attorney, acting as an attorney, is meaningfully involved in collecting the consumer debts at issue. (FAC ¶ 46).

Powell asserts four FDCPA violations provided for in 15 U.S.C. § 1692(e). They are:

(a)    Using false, deceptive or misleading representations or means in connection with the collection of a debt; [Section 1692]

(b)    Threatening to take any action that cannot legally be taken or that is not intended to be taken; [Section 1692(e)(5)]

(c)    Using unfair or unconscionable means to collect or attempt to collect any debt; [Section 1692(e)(10)] and

(d)    Making a false representation or implication that an attorney is meaningfully involved [Section 1692(e)(3)].

---

[3]    A copy of the letter is attached to this Opinion as an Appendix.

(FAC ¶ 49) ([bracketed] material inserted).[4]

Powell filed his original complaint against Aldous on May 25, 2017. (ECF no. 1). Aldous filed a motion to dismiss on July 19, 2017. (ECF no. 4). Powell then filed a first amended complaint on August 17, 2017. (Herein, the "complaint," unless otherwise specified, refers to the first amended complaint.)

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

---

[4]     Powell would also assert these claims on behalf of a Rule 23 class consisting of "all New Jersey consumers and their successors in interest, who were sent debt collection letters and/or notices from [Aldous]" that violated the FDCPA. (FAC ¶ 11). In this opinion, I deal with the antecedent issue of whether Powell himself possesses a claim.

4

*Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement,* 643 F.3d 60, 70-73 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010). In doing so, it has provided a three-step process for evaluating a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal,* 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 & n.7 (3d Cir. 2016); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

## III.   DISCUSSION

In its motion to dismiss, Aldous claims that: (A) Powell fails to plead sufficient facts that the Diamond Wireless obligation is a consumer debt within the meaning of the FDCPA; (B) the letter does not constitute an unfair practice under the "least sophisticated consumer" standard; and (C) any misstatements in the letter are not material or actionable. (Def. Br.).

### A. Pleading Sufficient Facts Regarding "Consumer Debt"

The complaint sufficiently pleads that the Diamond Wireless obligation is a consumer debt within the meaning of the FDCPA. The FDCPA applies to "consumer debt," where a "consumer" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" is defined as follows:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

*Id.* § 1692a(5).

Aldous identifies *Sanon-Lauredant v. LTD Financial Services, L.P.* as an example of a complaint that insufficiently pled that the "debt" in question fell under the FDCPA. No. 15-cv-6529, 2016 WL 3457010 (D.N.J. June 22, 2016). In *Sanon-Lauredant*, the complaint did little more than repeat the language of the statute:

> The alleged CHASE obligation arose out of a transaction in which money, property, insurance or services, which are the subject of the transaction, were primarily for personal, family or household purposes.

*Id.* at *2. The court found that this allegation, unsupported by any facts, was a legal conclusion that did not satisfy the pleading requirements of Federal Rule of Civil Procedure 8. *Id.* It was a mere recitation of the statute. *See Vaquero v. Frederick J. Hanna & Assocs., P.C.*, No. 13-cv-641, 2013 WL 5947011 (D.N.J.

6

Nov. 6, 2013) (finding that the sole allegation that "Defendant sought to collect from [Plaintiff] a debt allegedly due to [Chase Bank] arising from transactions incurred for personal, family, or household purposes" did not satisfactorily plead the existence of a debt under the FDCPA); *cf. Johns v. Northland Group, Inc.*, 76 F. Supp. 3d 590, 598 (E.D. Pa. 2014) (finding that "Defendant is a debt collector as that term is defined by 15 U.S.C. § 1692(a)(6), and sought to collect a consumer debt from Plaintiff" is a legal conclusion that does not plausibly allege that the debts at issue are covered by the FDCPA).

Powell's complaint is not analogous. The complaint pleads factually that Powell entered into an agreement with Diamond Wireless for his personal use of wireless service; that this created a financial obligation; that he used the wireless service exclusively for his personal purposes; that conversely he did not use the wireless service for any business purposes; and that the transaction created debt. (FAC ¶¶ 15-25). The complaint then alleges that the Diamond debt was referred to Aldous for the purposes of collection. (FAC ¶¶ 30-32). These facts and statements are sufficient to satisfy the pleading requirements. They go well beyond a "threadbare recital" of the statute's elements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. The "Least Sophisticated Consumer" Standard

Congress enacted the FDCPA in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Congress explained that the law's purpose was to eliminate abusive debt collection practices while "insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). The FDCPA confers a private right of action. *Id.* § 1692(k).

Since the FDCPA is a remedial statute, courts construe its language broadly so as to effect its purpose. *See Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011). Thus, FDCPA claims in the Third Circuit

are analyzed under "the least sophisticated debtor" standard. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006).

> The least sophisticated debtor standard requires more than "simply examining whether particular language would deceive or mislead a reasonable debtor" because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor. This lower standard comports with a basic purpose of the FDCPA: ... to protect "all consumers, the gullible as well as the shrewd," "the trusting as well as the suspicious," from abusive debt collection practices. However, while the least sophisticated debtor standard protects naive consumers, "it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."

*Id.* (internal citations omitted); *see also Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000). Under this standard, the least sophisticated debtor is presumed to read a collection notice in its entirety. *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008). Moreover, a false statement must be material in order to be actionable under the FDCPA. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 420-22 (3d Cir. 2015).

The parties dispute whether the letter, read as a whole, could lead the least sophisticated consumer to believe that (1) an attorney at Aldous was meaningfully involved in collecting the debt, or that (2) Aldous was threatening legal action against plaintiff that it cannot legally take or did not intend to take. *See* 15 U.S.C. § 1692e.

### 1.    Attorney Disclaimer Language

The Aldous letter sufficiently disclaims meaningful attorney involvement. Most pertinently, it contains the prominent statement, "At this time, not [*sic*] attorney with this firm has personally reviewed the particular circumstances of your account."

The relevant precedential case in the Third Circuit is *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993 (3d Cir. 2011). In *Lesher*, a law firm sent a collection letter with the law firm's letterhead, stating that "your account ... is being handled by this office." *Id.* at 995. The letter explained that the consumer could settle a debt for 75% of the balance. *Id.* Immediately below the address, the letter states: "Notice: Please see reverse side for important information." *Id.* The back of the letter set forth four "notices," including:

> This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.
>
> At this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account.

*Id.* The district court acknowledged that the letter disclaimed attorney review. *Id.* However, the district court and the Third Circuit agreed that the disclaimer "did not mitigate the impression of potential legal action." *Id.* 1002-03.

The Third Circuit found that the least sophisticated consumer "may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action." *Id.* at 1003.

> Nor do we believe that the disclaimers included in the letters, which were printed on the backs, make clear to the least sophisticated debtor that the Kay Law Firm is acting solely as a debt collector and not in any legal capacity in sending these letters.
>
> First, in our view, the statement that '[a]t this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account' does little to clarify the Kay Law Firm's role in collecting the debt because it completely contradicts the message sent on the front of the letters—that the creditor retained a law firm to collect the debt.

*Id.* (paragraph breaks added). Moreover, the disclaimer that the letters were "from a debt collector" is a statutory requirement that "should not be viewed as nullifying any implication that this letter is from an attorney." *Id.* (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 223 (3d Cir. 2008)).

Ultimately, an unsophisticated consumer who receives a letter from an attorney "knows the price of poker has just gone up." *Id.* (citing *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

> For this reason, we believe that it was misleading and deceptive for the Kay Law Firm to raise the specter of potential legal action by using its law firm title to collect a debt when the firm was not acting in a legal capacity when it sent the letters.

*Id.* The *Lesher* court emphasized that the disclaimer in its case was on the back of the letter:

> We recognize that the Second Circuit held in *Greco* that the language in this disclaimer sufficiently explained the limited role that the attorneys played in collecting the plaintiff's debt. *See* 412 F.3d at 366. In viewing the Kay Law Firm letters at issue here, however, we are not convinced that this disclaimer, which—unlike in *Greco*—was printed on the back of the letters, effectively mitigated the impression of attorney involvement. *See* [*Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009)] (distinguishing the letter in Greco from the Kay Law Firm's letter based on the position and context of the disclaimer).

*Id.* at 1003 n.11.

*Lesher* did not resolve whether printing such a disclaimer on the front of the letter would counteract the letter's use of law firm letterhead.[5] However, three district courts in this circuit have determined, post-*Lesher*, that a one-page collection letter on attorney letterhead that contains such a disclaimer on its face does not violate the FDCPA. Non–Third Circuit cases interpreting *Lesher* have also concluded that such a disclaimer complies with the FDCPA

---

5     The Third Circuit wrote, in a footnote in *Lesher*,

> We need not decide whether an attorney debt-collector who sends out a collection letter on attorney letterhead might, under appropriate circumstances, comply with the strictures of the Act by including language that makes clear that the attorney was not, at the time of the letter's transmission, acting in any legal capacity.

650 F.3d at 1003.

when it is printed clearly on the front of the letter. *See, e.g., Spurgeon v. Frederick J. Hanna & Assocs.*, No. 14-cv-3098, 2015 WL 1246157 (D. Neb. Mar. 17, 2015); *Derry v. Buffalo & Assocs.*, 958 F. Supp. 2d 839 (E.D. Tenn. 2013); *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913 (N.D. Ohio 2011). Moreover, the Second and Fifth Circuits agree that this statement sufficiently disclaims direct attorney involvement. *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009); *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005).

In *Eddis v. Midland Funding, L.L.C.*, No. 11-cv-3923, 2012 WL 664812, at *9 (D.N.J. Feb. 28, 2012), the court found that the use of the disclaimer "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account" on the front of a collection letter sent on law firm letterhead was sufficient to comply with the FDCPA. *Id. Eddis* compared the Second Circuit *Greco* case, which found this disclaimer sufficient, with *Lesher*, which found that the statement "located on the back of the letter" did little to clarify the situation. *Id.* at *7. The court distinguished *Lesher* because the disclaimer was printed on the front of the letter in a clear font. *Id.* at *8-9.

In *Davis v. Lyons, Doughty & Veldhuis, P.A.*, 855 F. Supp. 2d 279 (D. Del. 2012), the plaintiff received a one-page collection letter on a law firm's letterhead. *Id.* at 281-82. The plaintiff argued that the defendant's use of law firm letterhead falsely implied that an attorney was involved and thus sent the message that the "price of poker [had] gone up." *Id.* at 283 (citing Lesher, 650 F.3d at 223). The court, however, held that the disclaimer on the front of letter that stated "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account" was "sufficient to inform the least sophisticated consumer that an attorney was not involved." *Id.* The court emphasized that the disclaimer was placed in the middle of a one-page letter and was in a separate paragraph. *Id.* at 283-84 (citing *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 365 (2d Cir. 2005); *Eddis*, 2012 WL 664812, at *8-9)).

In *Hamilton v. LLM Management, Inc.*, No. 13-cv-2932, 2016 WL 589869, at *6 (E.D. Pa. Feb. 11, 2016), the plaintiff received a letter that contained the exact same language that was used in *Lesher*, *Davis*, and *Eddis*. Unlike in *Lesher*, however, the defendants placed this letter in bold lettering in the middle of the page. *Id.* The defendants' use and placement of this language made it clear to the average consumer that the attorney was not, at the time of the letter's transmission, acting in any legal capacity. *Id.*

In accord with *Eddis*, *Hamilton*, and *Davis*, I conclude that a statement like the one used in the Aldous letter sufficiently disclaims meaningful attorney involvement.[6] Many factors are involved. The disclaimer is in a bold, normal sized font (not the proverbial "fine print." It is located on the front of a one-page letter, and is set apart in a separate paragraph. The letter is not signed by an attorney. *See Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993) (finding that "the use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it," and thus implies direct attorney involvement). The disclaimer communicates in clear language that an attorney is not meaningfully involved in the consumer's case. Although the Court can imagine facts which, as in *Lesher*, could vitiate the disclaimer's value or make the letter appear threatening to the least sophisticated consumer, no such facts are presented here.

## 2.   Threats of Legal Action

The Aldous letter, read in its entirety with its prominent disclaimer, does not use false, deceptive or misleading representations; does not use unfair or unconscionable means; and does not make a false representation or implication that an attorney is meaningfully involved. *See* 15 U.S.C. § 1692e(3), (5), (10). Aldous states that the consumer can satisfy his debt by immediately paying a lower amount than the amount due. There is no threat; the letter

---

[6]     Aldous uses substantially the same disclaimer as the *Eddis*, *Hamilton*, and *Davis* letters. There is a typographical error in the Aldous letter, but this typographical error ("not" for "no") does not materially change the disclaimer. It would not lead the least sophisticated consumer to interpret the disclaimer differently.

merely states that failure to pay the debt at all may have a negative impact on one's credit report. The Aldous letter does not threaten legal action or suggest that a suit is imminent.

Powell claims that the Aldous letter threatens legal action in violation of Section 1692e(5). In that respect, he argues, this letter is distinguishable from the letters in *Eddis*, *Hamilton*, and *Davis*. First, Powell argues that Aldous's letter contains legal language such as the words "amnesty," "settlement," and "obligation," which he suggests may be interpreted by the least sophisticated consumer as threatening legal action. This argument is unavailing. Section 1692e(5) prohibits a debt collector from threatening to take action that it cannot legally take or does not intend to take. A debt collector may violate this section by threatening certain legal actions. *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452-53 (3d Cir. 2006); *Davis*, 855 F. Supp. 2d at 284. The Aldous letter, however, does not threaten legal action. There is not, for instance, threats to sue, attach personal property, or use legal procedures if the payment is not made. The use of words such as "amnesty," "settlement," or "obligation" falls far short of any such threat.

Second, Powell asserts that the three district court cases interpreting *Lesher*—i.e., *Eddis*, *Hamilton*, and *Davis*—all involved law firms licensed to practice in the state in which the consumer lived. (Pl. Br. 11). According to Powell, those firms at least *could* take legal action against the debtors. Aldous, however, is not licensed to practice in New Jersey; thus, says Powell, the letter threatens legal action that Aldous cannot take. As stated above, however, the premise of this argument is invalid; the Aldous letter does not threaten legal action at all. Whether or not any Aldous attorneys are licensed to practice in New Jersey does not change that analysis. The Aldous letter thus does not violate section 1692e(5); *see Davis*, 855 F. Supp. 2d at 284.[7]

---

[7]    I do not reach Aldous's alternative argument that, because it is not licensed to practice in New Jersey, the letter could not have been interpreted as threatening legal action. The consumer, it says, would infer that Aldous's attorneys are not licensed in

The Aldous letter does not violate the FDCPA because it does not threaten legal action and because it prominently disclaims meaningful attorney involvement. It does not use fraudulent or coercive means.

### C. Whether Any Misstatements Are Material or Actionable

Since the Aldous letter did not violate the FDCPA or make any misstatements, I will not address separately whether any such misstatements were material or actionable.

## IV.    CONCLUSION

For the foregoing reasons, defendant Aldous's motion to dismiss the first amended complaint is granted.

An appropriate order accompanies this opinion.


Dated: January 3, 2018

KEVIN MCNULTY
United States District Judge

---

because the letter lists the states in which Aldous attorneys *are* licensed: New York, Louisiana, Pennsylvania, and Utah. A case accepting such an argument, *Spurgeon v. Frederick J. Hanna & Assocs., P.C.*, No. 14-cv-3098, 2015 WL 1246157, at *4 (D. Neb. Mar. 17, 2015), did not hold that such a listing of states would save an otherwise actionable letter, but analyzed it in the context of other factors. It appears to me that this implication-by-omission would not necessarily communicate to the "the least sophisticated consumer" that he or she was not subject to being sued. Indeed, a slightly more sophisticated consumer might well be aware that an out-of-state firm could retain local counsel for that purpose.

# APPENDIX



Nathan Perry - of Counsel**
Jeffrey N. Aldous*

**ALDOUS**
& ASSOCIATES
*Attorneys at Law*
P.O. Box 171374 • Holladay, UT 84117-1374
Toll Free: (888) 221-5155

Office Hours
Mon - Thu 8:00AM to 7:00PM (MST)
Fri 8:00AM to 6:00PM (MST)

Fitzroy Powell

**FEB 1 0 2017**

Date: January 21, 2017
YOUR ACCOUNT NUMBER:
Agreement with: Diamond Wireless

Total Due:            $400.00
Amnesty Program:      $200.00

The original creditor of this file, Diamond Wireless, has developed an "Amnesty Program," for seriously delinquent accounts. Therefore, you will be permitted to clear your obligation on your past due amount by paying 50% of the Total Due to our office no later than April 15, 2017.

Amnesty Program amount to settle debt: $200.00. Pay now online by going to www.aldouslegal.com and click "Pay Now" at the top. Be sure to reference the listed account number.

A negative credit report reflecting on your credit record may be submitted to a credit reporting agency and will remain if you fail to fulfill the terms of your credit obligations. Upon receipt of this payment, your account and any negative report to the credit bureau will be "Settled in Full," and you will be released from further obligation.

If you desire to pay over the phone, please contact our office today at 1.888.221.5155. More than thirty (30) days has passed since our first written notice to you. Currently, your obligation is not resolved.

When payment is received your obligation will be finalized and closed. Once paid and if you choose, you will be able to enter into a new agreement with the original creditor.

Sincerely,
Aldous & Associates, P.L.L.C.

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

At this time, not attorney with this firm has personally reviewed the particular circumstances of your account.

OUR ATTORNEYS ARE ADMITTED TO PRACTICE IN ONE OR MORE OF THE FOLLOWING:
NEW YORK**, LOUISIANA*, PENNSYLVANIA, UTAH*
SE HABLA ESPANOL. NEW YORK CITY DCA LICENSE #: 2004462-DCA

If you requested in writing proof of the debt or the name and address of the original creditor within the thirty (30) day period which began with your receipt of the original demand letter, the law required our office to suspend efforts to collect the debt until we mail the requested information to you.

For California Residents: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

For New York Residents: Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: The use or threat of violence; The use of obscene or profane language; and Repeated phone calls made with the intent to annoy, abuse, or harass. If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt: Supplemental security income, (SSI) Social security; Public assistance (welfare); Spousal support, maintenance (alimony) or child support; Unemployment benefits; Disability benefits; Workers' compensation benefits; Public or private pensions; Veterans' benefits; Federal student loans, federal student grants, and federal work study funds; and Ninety percent of your wages or salary earned in the last sixty days.

*** Please detach the lower portion and return with your payment ***

IF YOU WISH TO PAY BY CREDIT CARD, CHECK ONE AND FILL IN THE INFORMATION BELOW:

|  | | VISA | |
|---|---|---|---|
| CARD NUMBER | | | EXP. DATE |
| CARD HOLDER NAME | | | CVV |
| SIGNATURE | | AMOUNT PAID | |

PO Box 505
Linden MI 48451-0505
ADDRESS SERVICE REQUESTED

January 21, 2017

Your Account Number:
Agreement With: Diamond Wireless
Total Due Balance: $200.00

Fitzroy Powell

Aldous & Associates
P.O. Box 171374
Holladay UT 84117-1374